FORTIER v AETNA CASUALTY AND SURETY COMPANY

Docket No. 67012. Submitted November 9, 1983, at Detroit.—Decided February 6, 1984. Leave to appeal applied for.

Plaintiff, C. Madalene Fortier, and her husband, Charles M. Fortier, were involved in a motor vehicle accident. Mr. Fortier died as a result of injuries sustained in the accident. At the time of the accident, the Fortiers were insured by defendant, Aetna Casualty and Surety Company, under a no-fault policy. Defendant was immediately advised of the accident and received a timely application for benefits. Defendant began paying benefits pursuant to § 3108 of the no-fault act. Defendant stopped making these payments when plaintiff began receiving social security benefits. Plaintiff then brought suit in district court seeking reinstatement of the § 3108 benefits and expenses, not exceeding $20 per day, reasonably incurred by plaintiff for the replacement of ordinary and necessary services that were lost as a result of her husband's death. In addition, plaintiff individually brought her own claim for medical and wage losses. Defendant deducted the amount originally paid under § 3108 from this later claim, considering that amount to be an overpayment. In response to defendant's interrogatories requesting proof to substantiate the claim for loss of services, plaintiff sent defendant a ledger kept by her children regarding the services performed, the length of time of such performance, and the rates charged for such services. On the first day of trial in district court, defendant paid to the plaintiff the amount

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 4] 7 Am Jur 2d, Automobile Insurance § 363.
Entitlement of child, spouse, parent, or other person to survivor's loss benefit under no-fault insurance acts. 12 ALR4th 975.
Validity and construction of "no-fault" automobile insurance plans. 42 ALR3d 229.
[2] 29 Am Jur 2d, Evidence §§ 621, 622.
[5] 7 Am Jur 2d, Automobile Insurance §§ 344, 357.
Automobile insurer's liability for statutory excess interest for delayed payment of no-fault claim. 14 ALR4th 761.
[6] 7 Am Jur 2d, Automobile Insurance § 345.
44 Am Jur 2d, Insurance § 1772.

that it had improperly deducted from plaintiff's wage loss and medical expenses benefits. Plaintiff's children then presented testimony of their agreement to render the replacement services and of the services rendered. The jury returned a verdict awarding plaintiff $10,000 for replacement services and $4,336 for expenses incurred in acquiring Blue Cross insurance which had previously been provided by her husband's employer. The district court judge then awarded 12% interest for defendant's failure to promptly pay the Blue Cross replacement charges, for the charges for replacement services, for the wage loss benefits due plaintiff individually, and for the sum that defendant had improperly deducted from the benefits, which sum was paid on the first day of trial. The court also awarded attorney fees of 1/3 of the total sum. Defendant paid the Blue Cross award with interest and the interest on plaintiff's wage loss claim. Defendant then appealed to the Macomb Circuit Court which reversed the district court's award finding that plaintiff had failed to prove that she had incurred expenses to replace the services that were lost as a result of her husband's death. The circuit court, Kenneth N. Sanborn, J., found that checks, receipts, and the like would be required to prove such a claim and prevent collusive litigation. The circuit court also found that when one of Charles Fortier's dependent's services benefitted another of his dependents, such dependent was acting in furtherance of the common goal of maintaining the household and was not replacing the father's services. The circuit court also overturned the award of penalty interest and attorney fees. Plaintiff appeals by leave granted. *Held:*

1. The circuit court erred in requiring more formal documentation of the replacement services. Plaintiff is only required to establish that she incurred a liability. There was testimony to this effect. The fact that plaintiff's children made a ledger which supported such testimony does not make the testimony based on the ledger inadmissible. The validity of the testimony is to be determined by the trier of fact. The circuit court erred in overruling the jury's verdict.

2. Replacement services are recoverable even if performed by members of the family. The circuit court erred in finding otherwise.

3. Plaintiff is not precluded from recovering expenses for replacement services which may seem to cover ordinary household tasks. The services for which plaintiff claims expenses are within the statutory definition of "ordinary and necessary services".

4. The district court properly awarded penalty interest. The

circuit court erred in holding that plaintiff must prove that defendant arbitrarily or unreasonably delayed payment of the benefits.

5. The record contains sufficient facts to support the district court's finding that defendant unreasonably refused to pay the benefits. The circuit court, therefore, improperly reversed the district court's award of attorney fees.

6. The district court properly awarded no-fault benefits, interest, and attorney fees.

Reversed.

1. INSURANCE — NO-FAULT INSURANCE — SURVIVOR'S LOSS BENEFITS — REPLACEMENT SERVICES — PROOF OF LIABILITY.

   A plaintiff in an action pursuant to the no-fault insurance act seeking to recover expenses reasonably incurred by the dependents of an insured decedent in obtaining ordinary and necessary services in lieu of those that the deceased would have performed for the benefit of such dependents if the deceased had not suffered the injury causing death is only required to establish that he incurred a liability for such replacement services; the validity of testimony regarding the incurrence of such liability is to be determined by the trier of fact (MCL 500.3108; MSA 24.13108).

2. EVIDENCE — SELF-SERVING TESTIMONY.

   There is no rule of evidence or statute which excludes testimony as self-serving where the testimony is based on a ledger made by the testifying witness.

3. INSURANCE — NO-FAULT INSURANCE — SURVIVOR'S LOSS BENEFITS — REPLACEMENT SERVICES.

   The no-fault insurance act is not concerned with the status of the person providing replacement services pursuant to the act's provision regarding survivor's loss benefits; replacement services are recoverable pursuant to the act even if performed by members of the family (MCL 500.3108; MSA 24.13108).

4. INSURANCE — NO-FAULT INSURANCE — SURVIVOR'S LOSS BENEFITS — REPLACEMENT SERVICES.

   Replacement service expenses for ordinary household tasks such as babysitting, housecleaning, and lawn mowing are within the statutory definition of ordinary and necessary services for purposes of the no-fault insurance act provision regarding survivor's loss benefits (MCL 500.3108[1]; MSA 24.13108[1]).

5. INSURANCE — NO-FAULT INSURANCE — PENALTY INTEREST.

The no-fault insurance statute regarding the payment of benefits as loss accrues only requires that the insured present the insurer with reasonable proof of loss; where an insurer does not pay the claim within 30 days after receiving such proof, it becomes liable for penalty interest (MCL 500.3142; MSA 24.13142).

6. INSURANCE — ACTION FOR BENEFITS — ATTORNEY FEES.

A court may hold an insurer liable for an insured's attorney fees in an action for insurance benefits which are overdue where the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment (MCL 500.3148[1]; MSA 24.13148[1]).

*Bender & Thompson, P.C.* (by *John G. Thompson*), for plaintiff.

*Collins, Einhorn & Farrell, P.C.* (by *Brian Einhorn* and *Noreen L. Slank*), for defendant.

Before: T. M. BURNS, P.J., and GRIBBS and C. J. HOEHN,* JJ.

T. M. BURNS, P.J. On September 20, 1975, plaintiff and her husband, Charles M. Fortier, were involved in a motor vehicle accident. Mr. Fortier died as a result of injuries sustained in that accident. At the time of the accident, the Fortiers were insured by defendant, Aetna Casualty and Surety Company, under a no-fault policy. Defendant was immediately advised of the accident and received a timely application for benefits.

Defendant began paying benefits pursuant to § 3108 of the no-fault act, MCL 500.3108; MSA 24.13108. Plaintiff began receiving social security benefits and defendant stopped making these payments. On September 23, 1976, plaintiff brought suit in district court seeking reinstatement of § 3108 benefits and expenses, not exceeding $20

* Circuit judge, sitting on the Court of Appeals by assignment.

per day, reasonably incurred by plaintiff for the replacement of ordinary and necessary services that the deceased would have performed, but for his death. In addition to these claims, Mrs. Fortier individually brought her own claim for medical and wage losses. Aetna deducted the amount originally paid under § 3108 from this latter claim because they considered that amount to be an overpayment.

On February 22, 1978, defendant sent interrogatories to plaintiff requesting proof to substantiate her claim for loss of services. Plaintiff replied by sending defendant records kept by plaintiff's children. Mrs. Fortier had agreed to pay her children for services they rendered to replace the services that were formerly performed by her husband. She encouraged the children to keep records of these services. The children marked on calendars the services they performed, the amount of time they spent performing them, and the rates that they charged. Entries from these calendars were then entered onto a ledger. Defendant was given this ledger as proof of these services.

This case went to trial in the district court on June 9, 1980. On the first day of trial, Aetna paid the amount that it had improperly deducted from Mrs. Fortier's wage loss and medical expenses benefits. Mrs. Fortier's children then presented testimony of their agreement and of the services that they had rendered. The jury returned a verdict in favor of plaintiff, awarding $10,000 for replacement services and $4,336 for expenses that plaintiff incurred in acquiring Blue Cross insurance which had previously been provided by Mr. Fortier's employer. The trial judge then awarded 12 percent interest for defendant's failure to promptly pay the Blue Cross replacement charges,

for the charges for replacement services, for the wage loss benefits due plaintiff individually, and for the sum that defendant improperly deducted from the benefits which was paid on the initial day of trial. The court also awarded attorney fees of one-third of the total sum. Aetna then paid the Blue Cross award with interest and the interest on Mrs. Fortier's wage loss claim.

Aetna appealed the remainder of the district court's judgment to the circuit court. The circuit court reversed the district court's award finding that plaintiff had failed to prove that she had incurred expenses to replace services lost because of the death of her husband. The circuit court found that "checks, receipts and the like" would be required to prove such a claim. A more liberal interpretation of the act, the circuit court felt, would result in reams of collusive litigation. The circuit court also found that when one dependent's services benefitted another dependent, they were acting in furtherance of the common goal of maintaining the household and, therefore, not replacing their father's services. The district court judge's award of penalty interest and attorney fees was also overturned. Plaintiff applied for leave to appeal from the circuit court's decision, and this Court granted leave.

The circuit court's ruling that plaintiff could only prove her case by presenting checks and receipts seems to be based on this Court's decision in *Adkins v Auto Owners Ins Co,* 105 Mich App 431; 306 NW2d 312 (1980). In *Adkins,* a widow claimed expenses for replacement services incurred because of her husband's death. She testified that her husband performed many tasks around the house and "if she were to place a monetary value on his services, she would esti-

mate $15 to $20 per day was appropriate". 105 Mich App 433. This Court found that the widow's testimony was insufficient evidence to show that she had become liable for replacing these services. The widow submitted 12 cancelled checks to establish that she incurred some expenditures to replace her husband's services. This Court held that the checks were sufficient to prove that she had incurred expenses for the amount of the checks only.

*Adkins* does not stand for the proposition that one must present the checks, bills, or invoices to support a claim for replacement services. In *Adkins,* the majority of the widow's claim was rejected because she failed to establish any agreement to pay for the replacement of these services and only estimated an amount for the value of the lost services. Likewise in *Schaible v Michigan Mutual Ins Co,* 116 Mich App 116; 321 NW2d 860 (1982), this Court found that an insured's testimony that he made an agreement with his relatives to pay them for their replacement services if he collected from the insurer was insufficient to prove that he incurred expenses for replacement services. The insured was unable to state how much he had agreed to pay his relatives. The insurer also had paid the insured for half of his claim for replacement services and the insured did not pay any of this money to the relatives pursuant to the agreement. This evidence tends to show that there was no such agreement.

Contrary to the circuit court's ruling, this Court has found that a plaintiff may recover for replacement services without presenting such formal documentation. In *Youmans v Citizens Ins Co of America,* 89 Mich App 387; 280 NW2d 539 (1979),

*lv den* 407 Mich 894 (1979), the plaintiff's wife was killed in an automobile accident. Plaintiff remarried and testified that he had an agreement with his new wife to pay her $20 per day to care for his child. He determined this amount based on the benefits provided in the no-fault statute. There was no definite term to the agreement between the parties. This Court allowed plaintiff to recover the claimed expenses. More recently, in *Manley v Detroit Automobile Inter-Ins Exchange,* 127 Mich App 444; 339 NW2d 205 (1983), a child suffered severe head injuries in an auto accident. The child's parents brought a claim for services performed for the child. The court, without any documentation, found that there was an implied agreement to provide these services, "[s]ervices performed by Mr. and Mrs. Manley which are 'allowable expenses' under the rule previously stated are implicitly purchased by [their child] at their reasonable market value". 127 Mich App 455.

The circuit court erred in requiring plaintiff to present more formal documentation to support her claim. Plaintiff is only required to establish that she incurred a liability. In the instant case, there was testimony to this effect. There was also extensive testimony as to the extent of liability that plaintiff incurred. The fact that decedent's children made the ledger which supported this testimony does not make the testimony inadmissible. Requiring further documentation such as checks, receipts, and bills would not prevent collusion as the circuit court judge reasoned, because parties in collusion could easily pass these documents between themselves. There is no rule of evidence, nor statutory provision, which would exclude testimony based on a self-made ledger as self-serving. The validity of this testimony is determined by the

trier of fact. The circuit court erred in overruling the jury's verdict.

The circuit court also erred in finding as a matter of law that dependents and other family members were barred from receiving payment for the value of services rendered to other dependents. The no-fault act is not concerned with the status of the person providing the replacement services. The replacement services are recoverable even if performed by members of the family. *Butler v Detroit Automobile Inter-Ins Exchange,* 121 Mich App 727, 742; 329 NW2d 781 (1982). As stated by this Court in *Youmans v Citizens Ins Co, supra,* pp 391-392:

"The Supreme Court has decided that the provision of services by a spouse or relative, where reasonable, is compensable under a provision of the Worker's Disability Compensation Act. MCL 418.315; MSA 17.237(315). Although the provision does not exactly parallel § 3108 of the no-fault act, both statutes create an entitlement for benefits reasonably provided. *Kushay v Sexton Dairy Co* [394 Mich 69; 228 NW2d 205 (1975)]. *Both statutes are concerned with the provision of services and not with the status of the person providing those services.* Thus, the Court in *Kushay* held that a spouse could recover for services rendered to a husband, even though, in all probability, she would have performed them absent the possibility of recovery from the employer. *Kushay v Sexton Dairy Co, supra,* pp 74-75." (Emphasis added.)

This Court in *Youmans* also rejected the family unit theory relied upon by the circuit court. As this Court stated, "[p]laintiff's remarriage, while re-establishing the family unit, in no way affected [the child's] need for ordinary and necessary services that her dead mother once provided". 89 Mich App 392. This Court also rejected defendant's

argument that plaintiff need procure the services from someone other than a relative, stating "[t]he insurer should not reap a windfall because ordinary and necessary services rendered to replace those which would have been performed are performed by a wife instead of a housekeeper or a nursemaid". 89 Mich App 390.

Plaintiff also is not precluded from recovering expenses for replacement services which may seem to cover "ordinary household tasks". Among the expenses plaintiff became liable to her sons for were babysitting, housecleaning, and lawn mowing. This Court in *Adkins, supra,* found that plaintiff could recover replacement service expenses for trash disposal, stove repairs, car maintenance, babysitting, plumbing repairs, and woodcutting. 105 Mich App 433. These are substantially the same types of services that plaintiff's sons provided. The services for which plaintiff claims expenses are within the statutory definition of "ordinary and necessary services". MCL 500.3108(1); MSA 24.13108(1).

The circuit court also denied interest on plaintiff's claim finding that the imposition of interest is a penalty against an arbitrary and unreasonable refusal to pay benefits. Such an interpretation of the interest provision has been specifically rejected by this Court. *Manley, supra,* p 460; *Cook v Detroit Automobile Inter-Ins Exchange,* 114 Mich App 53; 318 NW2d 476 (1982); *Nash v Detroit Automobile Inter-Ins Exchange,* 120 Mich App 568; 327 NW2d 521 (1982). The statute, MCL 500.3142; MSA 24.13142, only requires that the insured present the insurer with reasonable proof of loss. If the insurer does not pay the claim within 30 days after receiving this proof, it becomes liable for the interest.

The district court found that interest was recoverable in the instant case because the defendant should have known the children's ages and improperly deducted its claimed overpayment from the medical bills, that plaintiff provided notice of her claim for Blue Cross benefits and expenses in her answer to defendant's interrogatories, and that reasonable proof of plaintiff's claim for replacement services was given when plaintiff responded to defendant's interrogatories by presenting the ledger prepared by her children. The district court properly awarded penalty interest commencing 30 days after these proofs were presented to defendant. The circuit court erred in holding that plaintiff must prove that defendant arbitrarily or unreasonably delayed payment of these benefits.

We finally consider whether the circuit court properly reversed the district court's award of attorney fees. The court may hold the insurer liable for plaintiff's attorney fees, "if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment". MCL 500.3148(1); MSA 24.13148(1). The district court judge held a separate evidentiary hearing and concluded that defendant unreasonably delayed in making proper payment to the plaintiff. The district court specifically found that "[i]t seems clear from the testimony and evidence presented that there was never an intention to pay the type of claim that was presented". The record contains sufficient facts to support the district court's finding that defendant unreasonably refused to pay these benefits. The circuit court, therefore, improperly reversed the district court's award of attorney fees.

After carefully examining all of the arguments,

we find that the district court properly awarded no-fault benefits, interest, and attorney fees. We, therefore, reverse the decision of the circuit court.

Reversed.